IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DEBBIE MURPHY, an Arkansas
resident on behalf of herself and
all other Arkansas residents
similarly situated                                    PLAINTIFF


v.                          Case No. 4:11-cv-214-DPM


REEBOK INTERNATIONAL, LTD.                     DEFENDANT

## ORDER

Reebok International Ltd. makes and sells athletic shoes, in particular various supposedly muscle-toning shoes. Debbie Murphy, who bought some of these shoes, seeks to pursue claims for herself and all other Arkansas purchasers that Reebok's marketing violated the Arkansas Deceptive Trade Practices Act and unjustly enriched the manufacturer. Taking the hint from *Bell v. Hershey Company*, 557 F.3d 953, 958 (8th Cir. 2009), Murphy and her lawyers stipulated to damage caps in affidavits attached to the complaint. The affidavits' particulars are set out in Appendix A. The upshot is that Murphy has stipulated to cap all damages and relief for herself and others at $75,000.00 a person and $5,000,000.00 in the aggregate; Murphy's lawyers

have stipulated to cap fees and costs so as not to push any individual's award across the jurisdictional threshold and not to push any aggregate award beyond $5,000,000.00.

Murphy filed her case in the Circuit Court of Pulaski County, Arkansas. She prefers that forum.   Reebok removed the case, asserting federal jurisdiction under the Class Action Fairness Act's amendments to the diversity and removal statutes. Murphy moves to remand. The parties agree that minimal diversity and a proposed class exceeding 100 people exist.  28 U.S.C.A. § 1332(d)(2) & (5)(B) (West 2006).   The fighting issue is the jurisdictional amount:  Does "the matter in controversy exceed[ ] the sum or value of $5,000,000, exclusive of interest and costs . . . [?]" 28 U.S.C.A. § 1332(d)(2) (West 2006).

No.  Reebok must, as the party asserting federal jurisdiction, establish the amount in controversy by a preponderance of the evidence. *Bell*, 557 F.3d at 956–59.  "In our circuit the amount in controversy is determined by the value to the plaintiff of the right sought to be enforced."  *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008). Reebok has not shown by the greater weight of the evidence a controversy

from Murphy's perspective (individually or representing the proposed class) worth more than the jurisdictional minimum.

Reebok is correct: *Bell* is not directly on point.  The dispute there was "[t]he precise burden that applies to a removing defendant in the CAFA context[:]" a preponderance or a legal certainty.  557 F.3d at 956.  But Murphy is correct too: *Bell* is close because it reaffirmed long-settled removal law along the way to deciding the burden issue.

Two points are important.  First, Murphy is the master of her complaint even though Reebok asserts CAFA jurisdiction.  557 F.3d at 956.  Second, as the master of her pleading, Murphy can defeat federal jurisdiction by capping her potential damages through a binding stipulation.  557 F.3d at 958.  This last proposition has been the law for decades.  "If [plaintiff] does not desire to try [her] case in the federal court [s]he may resort to the expedient of suing for less than the jurisdictional amount, and though [s]he would be justly entitled to more, the defendant cannot remove."  *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938); *see also In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) (*per curiam*); *compare Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814–16 (8th Cir. 1969) (wife may not get loss-of-consortium claim

-3-

carved out and remanded with damage-cap stipulation because her claim was inextricably dependent on husband's injury claim, which exceeded jurisdictional amount). Other circuits have, as in *Bell*, echoed this proposition in CAFA cases. *E.g., Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *Morgan v. Gay*, 471 F.3d 469, 474–76 (3d Cir. 2006).

Murphy's stipulations are strong medicine. Arkansas law permitted Murphy to plead her damages specifically. ARK. R. CIV. P. 8(a)(2). She did so, both in the body of her complaint and with incorporated stipulations. *Amended Complaint ¶¶ 8–10 and Exhibits 1 & 2; see also* ARK. R. CIV. P. 10(c) (incorporation). Had Murphy not pleaded her damages with specificity, absent greater damages being later demanded or tried without objection, Arkansas law would hold her recovery in this diversity case to an amount less than the jurisdictional threshold. ARK. R. CIV. P. 8(c)(2); *Interstate Oil & Supply Co. v. Troutman Oil Co.*, 334 Ark. 1, 5–6, 972 S.W.2d 941, 943 (1998).

Stipulations are recognized and widely used in Arkansas practice. *E.g.,* ARK. R. CIV. P. 29 (discovery procedures); *Dodson v. Charter Behavioral Health System of Northwest Arkansas*, 335 Ark. 96, 102, 983 S.W.2d 98, 102 (1998) (basis for pretrial order narrowing issues, witnesses, and exhibits); *Price v. Price*, 29

Ark. App. 212, 217, 780 S.W.2d 342, 345 (1989) (testimony of absent witnesses); *National Investors Fire & Casualty Ins. Co. v. Edwards*, 5 Ark. App. 42, 47, 633 S.W.2d 41, 44 (1982) (bench trial on stipulated facts). A party can rarely escape her factual stipulations, *Stewart Title Guaranty Co. v. Treat*, 306 Ark. 289, 290–91, 810 S.W.2d 953, 954–55 (1991), though the court remains obliged to determine the legal consequence of the stipulated facts. *Nelson v. State*, 318 Ark. 146, 153, 883 S.W.2d 839, 843 (1994). And the amount of a party's damages is of course a matter of fact.

Finally, as Chief Judge Holmes recognized on similar facts in a similar case, all the material circumstances would judicially estop Murphy from changing her tune when the case returns to state court. *Harris v. Sagamore Ins. Co.*, No. 2:08-cv-109-JLH, 2008 WL 4816471, at *3 (E.D. Ark. 3 November 2008). The related doctrine against taking inconsistent positions, which Arkansas also recognizes, would stand in Murphy's way too. *McWhorter v. McWhorter*, 2009 Ark. 458, at 14, ___ S.W.3d ___, ___.

Reebok counters that Murphy's self-imposed limitations on damages break faith with her duties to the proposed class. Of course Murphy's

pleading on this point must be in good faith. *St. Paul*, 303 U.S. at 288. For many reasons, however, the Court sees no lack on this score.

First, Reebok's more than $100,000,000.00 in nationwide sales (from 2008 through the present) of its toning shoes does not establish that Murphy has sold out the proposed class. In light of Murphy's claim for disgorgement of profits, this gross number means little on jurisdiction. Nor has the company indicated what part of this number is Arkansas-related. Reebok has the burden, *Bell, supra,* and this failure of proof redounds to Murphy's benefit. Second, the possibility of punitive damages through Murphy's vague prayer for relief is not real. Her stipulation is unequivocal: *all* damages are capped below the statutory thresholds. Third, Arkansas law makes class certification easier in state court than federal law does in federal court. *See generally,* Kenneth S. Gould, *A Dynamic Development Under the Arkansas Rules of Civil Procedure: Arkansas's Favorable Approach to Class Actions,* 45 ARKANSAS LAWYER 20 (Fall 2010). Murphy candidly acknowledges her law-driven forum preference; and accepting a damage cap in return for less rigorous certification law may be a wise tactic in this case. It is, in any event, not bad faith.

Fourth, Reebok's attack on the stipulations goes more to Murphy's adequacy as a class representative and counsel's adequacy as class counsel than to good faith. These issues can be addressed after remand. *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 2009 Ark. 151, at 11–18, 300 S.W.3d 487, 494–97. Fifth, the removal window will remain open until February 2012 as the parties explore these issues in state court. If—notwithstanding all the hurdles—Murphy or a successor class representative somehow asserts claims satisfying the statute before then, Reebok may remove. 28 U.S.C.A. § 1446(b) (West 2006). Sixth, the Court is mindful that a similar Arkansas-consumers proposed class is pending in the Western District of Arkansas and several similar proposed nationwide-class cases are pending in other federal courts.* Arkansawyers who bought Reebok's toning shoes but are dissatisfied with Murphy's damage stipulations can always opt out of this case and consider their alternatives. But Murphy

---

*Tomlinson v. Reebok International Ltd.*, 5:11-cv-5036-JLH (W.D. Ark.); *Altieri v. Reebok International Ltd.*, 4:10-cv-11977-FDS (D. Mass.); *Schwartz v. Reebok International Ltd.*, 1:10-cv-12018-FDS (D. Mass.); *Cassidy v. Reebok International Ltd.*, 2:10-cv-9966-AHM-FFM (C.D. Ca.).

"has made her choice, and the plaintiffs in state court who choose not to opt out of the class must live with it." *Morgan*, 471 F.3d at 477–78.

\* \* \*

As Reebok forcefully argues, CAFA opened "the federal courts to corporate defendants out of a concern that the national economy risked damage from a proliferation of meritless class action suits." *Bell*, 557 F.3d at 957. The statute, however, drew an unambiguous jurisdictional line about the amount in controversy. Reebok has not shown by a preponderance of the evidence that Murphy's suit crosses that line by putting more than $5,000,000.00 in controversy. To take the next step, perhaps unnecessarily, even if the disputed amount exceeds the statutory requirement, by capping potential damages, attorney's fees, and all other relief at less than $5,000,000.00, Murphy has "establish[ed] to a legal certainty that [her] claim is for less than the requisite amount." *Bell*, 557 F.3d at 956. Murphy's motion to remand, *Document No. 8*, is granted. No attorney's fees or costs are justified given the nuanced issues presented. The case is remanded to the Circuit Court of Pulaski County, Arkansas, for want of subject matter jurisdiction.

So Ordered.

DPMarshall Jr.

D.P. Marshall Jr.
United States District Judge

22 April 2011

## APPENDIX A

I, Debbie Murphy, the named class Plaintiff, stipulate as follows:

1.      I do not seek individual damages exceeding $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought in the above-styled complaint.

2.      I will not accept an individual award exceeding $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought in the above-styled complaint.

3.      I do not seek and will not accept an aggregate award inclusive of attorneys' fees and costs exceeding $5,000,000.

4.      I do not seek and will not accept an award, inclusive of interest and attorneys' fees in excess of any of the jurisdictional minimum amounts as provided by 28 U.S.C. §1332 for federal court jurisdiction.

<u>/s/ Debbie Murphy</u>

*Document No. 1, at 51.*

Emerson Poynter LLP as putative class counsel, [ ] stipulates as follows:

1.      Emerson Poynter LLP does not seek combined attorneys fees and costs exceeding $75,000 for each named Plaintiff, inclusive of any other damages awarded to each named Plaintiff.

2.      Emerson Poynter LLP does not seek combined attorneys fees and costs exceeding $75,000 for each Class member,

-10-

inclusive of any other damages awarded to each class member.

3.     Emerson Poynter LLP will not accept an award for combined attorneys fees and costs exceeding $75,000 for each Class member, inclusive of any other damages awarded to each named Plaintiff.

4.     Emerson Poynter LLP will not accept an award for combined attorneys fees and costs exceeding $75,000 for each Class member, inclusive of any other damages awarded to each class member.

5.     Emerson Poynter LLP does not seek and will not accept an aggregate award for attorneys fees and costs exceeding $5.000,000. inclusive of any other damages awarded to each named Plaintiff and Class Member.

/s/ Emerson Poynter LLP

*Document No. 1, at 54–55.*

-11-